BARTH BROTHERS, Plaintiffs, v. BILLINGS, Defendant: FARM LOAN SERVICE, INC., Garnishee Defendant: PRODUCTION CREDIT ASSOCIATION OF MADISON, Impleaded Defendant and Respondent: ALFRED BARTH LIVESTOCK, INC., Impleaded Defendant and Appellant.

*No. 474. Argued March 6, 1975.—Decided April 10, 1975.*
(Also reported in 227 N. W. 2d 673.)

For the appellant there was a brief and oral argument by *Max H. Klein* of Middleton.

For the respondent there was a brief by *Jack F. Olson, Julie K. Mitby* and *Ross, Stevens, Pick & Ross, S. C.,* all of Madison, and oral argument by *James R. Cole* of Madison.

HANLEY, J. The following issues are presented upon appeal:

1. Did PCA have a valid perfected security interest in the cows sold at auction and the proceeds from that sale?

2. Did Barth have a purchase money security interest in the cows he sold Billings which would give it priority over PCA's claim?

3. Did Barth take possession of the cows it sold Billings prior to their sale at auction?

4. Did Barth prove that the cows it sold at auction were ones in which he had a security interest?

5. Is Barth entitled to the proceeds from the sale of the cows?

6. Is PCA entitled to double costs on this appeal because of the failure of Barth to include in its appendix an abridgment of the testimony at trial?

*PCA's security interest.*

The first issue concerns the validity and effectiveness of PCA's security interest. PCA's security interest stems

from the security agreement signed by Dean Billings and Dorothy Billings dated October 10, 1969. This security agreement provides that the security interest is given as security for payment of all existing and future indebtedness of the Billings to PCA. It also provides that the security interest is given in certain described property including "all cattle and offspring including, but not limited to [certain listed cattle] and also all cattle purchased with PCA drafts and/or advances" and "[a]ll property similar to that described . . . above, which at anytime may hereafter be acquired by the Debtor . . . ."

A security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement. Sec. 409.204 (3), Stats. 1971. Also, obligations covered by a security agreement may include future advances whether or not the advances are given pursuant to commitment. Sec. 409.204 (5), Stats. 1971.

The argument by Barth is that the security interest is invalid in after-acquired property because no new value was given. Sec. 409.204 (1), Stats. 1971, provides that a security interest cannot attach until (1) there is an agreement; (2) value is given; and (3) the debtor has rights in the collateral. Sec. 401.201 (44), Stats. 1971, provides in pertinent part:

"Except as otherwise provided . . . a person gives 'value' for rights if he acquires them:
" . . .
" (b) As security for or in total or partial satisfaction of a pre-existing claim . . . ."

Therefore, a security interest may be given for a preexisting debt. In White and Summers, *Handbook of the Law Under the Uniform Commercial Code* (1972), p. 792, sec. 23–4, the authors discussed this issue:

"The initial harvest of Article Nine cases under this section includes few surprises. Despite the plain language of 1–201 (44) (b), several parties have argued that a

creditor does not give value if he takes his security interest to secure a pre-existing claim against the debtor. The courts have tossed these parties out on their ears, as well they ought."

Barth contends that new value must be given for a valid security interest in after-acquired property. This contention is based on sec. 409.108, Stats., which provides:

"Where a secured party makes an advance, incurs an obligation, releases a perfected security interest, or otherwise gives new value which is to be secured in whole or in part by after-acquired property his security interest in the after-acquired collateral shall be deemed to be taken for new value and not as security for an antecedent debt if the debtor acquires his rights in such collateral either in the ordinary course of his business or under a contract of purchase made pursuant to the security agreement within a reasonable time after new value is given."

This section does not invalidate security interests in after-acquired property where a pre-existing claim is the value given, however. Rather, this section ". . . is of importance principally in insolvency proceedings under the federal Bankruptcy Act or state statutes which make certain transfers for antecedent debt voidable as preferences." Uniform Commercial Code (3 U. L. A.), sec. 9–108, Comment.

In the case of *In re Platt* (E. D. Pa. 1966), 257 Fed. Supp. 478, a situation similar to this was involved. The secured party there was given a security interest in the debtor's inventory and accounts receivable currently owned and thereafter to be acquired, to secure then existing indebtedness, a present advance and future advances. The trustee in the bankruptcy proceeding argued that the secured party was at most secured only as to the amount still owing on the present advance because that was the only new value given. The court stated:

"[This] . . . argument is devoid of merit. Attachment plus filing was sufficient to perfect the security agreement. The only element of attachment in dispute is value up to the full debt proved in bankruptcy. However, value as defined by the Code may consist of pre-existing claims. Sec. 1–201 (44). Therefore, all of the indebtedness covered by the security agreement was secured by the accounts and inventory of the debtor.

"Section 9–108 is irrelevant in a situation governed by Section 70 (c) of the Bankruptcy Act. It is intended only as a purported definition of 'antecedent debt' to attempt to override the alleged harshness of Sec. 60 of the Bankruptcy Act." (P. 482).

Therefore, PCA's security interest, in this case, is not invalid because it was given as security for a pre-existing claim.

Barth also contends that the security interest of PCA is limited as to after-acquired property, to cattle purchased with PCA drafts and/or advances. This claim is based on only part of the security agreement's description of the collateral. As noted the description also includes all similar property to that previously described which the debtor later acquires. The security agreement also covers the proceeds of any of the described property. Therefore, the security interest in after-acquired property is not limited to property acquired by PCA drafts or advances.

The requirements of secs. 409.203 and 409.204, Stats. 1971, as to enforceability and attachment of the PCA security interest have been met. A financing statement, including in the description of the collateral "all cattle," was filed as required by sec. 409.302, Stats. 1971, so as to perfect PCA's security interest.

*Barth's security interest.*

Because PCA had a perfected security interest in the cattle sold at auction, the next question is whether Barth had a valid security interest. The security interests

claimed by Barth are based on notes signed by Dean Billings with the notations that they are secured by financing statements filed and describing the collateral and signed by both Dean Billings and Alfred Barth. PCA contends, and the trial court agreed, that no security interest exists because there is no signed security agreement.

For a security interest to attach, there must be an agreement that it attach. Sec. 409.204, Stats. 1971. A security interest is not enforceable against the debtor or third parties unless the collateral is in the possession of the secured party or the debtor has signed a security agreement which contains a description of the collateral. Sec. 409.203 (1), Stats. 1971. "Security agreement" is defined to mean "an agreement which creates or provides for a security interest." Sec. 409.105 (1) (h), Stats. 1971.

A leading case on the question of whether or not there is a valid security interest where the debtor executes a promissory note and signs a financing statement, but does not sign a security agreement is *American Card Co. v. H.M.H. Co.* (1963), 97 R. I. 59, 63, 196 Atl. 2d 150. There the court ruled that, while it is possible for a financing statement and a security agreement to be one and the same document, it is not possible for a financing statement which does not contain the debtor's grant of a security interest to serve as a security agreement. The court said:

"The financing statement which the claimants filed clearly fails to qualify also as a security agreement because nowhere in the form is there any evidence of an agreement by the debtor to grant claimants a security interest. As for the testimony of the claimants' agent upon which they also rely to prove the intention of the debtor to make such a grant, our answer is that his testimony is without probative force to supply the absence of a required security agreement in writing." *See also: L and V Co. v. Asch* (1972), 267 Md. 251, 297 Atl. 2d 285.

This decision has been followed in a number of cases. In *Kaiser Aluminum & Chemical Sales, Inc. v. Hurst* (Iowa 1970), 176 N. W. 2d 166, the Iowa court held that no enforceable security interest existed where the debtor had executed a promissory note containing the notation: "This note covered by security agreement dated March 9, '67." A financing statement was executed and filed. It was recognized that a financing statement may double as a security agreement if it contains appropriate language which grants a security interest, but a financing statement does not ordinarily create a security interest. No security interest existed in the case because the financing statement did not contain any language granting such an interest. No security agreement was executed.

In *Safe Deposit Bank & Trust Co. v. Berman* (1st Cir. 1968), 393 Fed. 2d 401, the debtor borrowed money on a demand note which stated "having deposited with said bank, as collateral for payment of this and any and all other liabilities . . . the following property, viz.: Security Interest in Accounts Receivable . . . ."

The court said:

"A note, even reciting data relating to collateral security, is not thereby converted into [a security] agreement. *Harding v. Eldridge,* 186 Mass. 39, 71 N. E. 115 (1904)." 393 Fed. 2d at page 403.

Some of the other cases holding that no enforceable security interest existed where no words granting any security interest at all or any security interest in particularly described property are: *Shelton v. Erwin* (8th Cir. 1973), 472 Fed. 2d 1118 (note on title application for automobile showing creditor as the holder of the first lien and bill of sale not sufficient to establish security interest in the automobile) ; *Mitchell v. Shepherd Mall State Bank* (10th Cir. 1972), 458 Fed. 2d 700 (security interest did not apply to property listed in

security agreement to which words of grant did not apply); and *General Electric Credit Corp. v. Bankers Commercial* (1968), 244 Ark. 984, 429 S. W. 2d 60 (financing statement standing alone does not create a security interest in the debtor's property but merely served notice that the named creditor may have a security interest).

Under the above authorities Barth did not have a perfected security interest in the collateral described in the financing statement because no security agreement was signed granting a security interest in the collateral.

*Possession.*

Barth contends that it took possession of the collateral prior to the auction. However, since Barth did not have a perfected security interest pursuant to the notes and financing statement, this contention is irrelevant. Because PCA's security interest was perfected prior to this, Barth's claim to the proceeds rests on the priority given purchase money security interests by sec. 409.312 (4), Stats. 1971. For such a security interest to be given priority, this section requires that the security interest be perfected within ten days of the debtor receiving possession. Therefore, while a security interest may become enforceable and be perfected by the secured party taking possession, secs. 409.203 and 409.305, Stats. 1971, it would not give Barth priority over PCA's claim because the last sale of cattle by it to Billings was made in July, 1972. Even if Barth had a security interest it could not be given priority over PCA's security interest which had been perfected. *See Burlington Nat. Bank v. Strauss* (1971), 50 Wis. 2d 270, 277, 184 N. W. 2d 122.

In its decision the trial court stated that Barth had failed to prove it had possession of the cows in question. At the close of the trial, the court commented on this point as follows: ". . . he didn't go out there in

the barn and corral all his cows into a separate portion of the yard. They were still all running together. I don't know how you—to take possession he would have had to segregate his cows, I would think." Certainly Barth did not have physical control of the cows. Barth merely checked to see if some of the cows in the yard had barn numbers which corresponded to the numbers on the list furnished to him by Mrs. Billings.

*Proof of interest in the cows sold.*

Barth contends that the trial court erred in its finding that it did not establish how many cows were sold at the auction.

Even if Barth did have an enforceable security interest in the cows he sold to Billings, it would be necessary for it to prove that these cows were sold at the auction. It would also be necessary to prove the price at which these particular cows were sold. Alfred Barth testified that he sold Billings 66 cows, that 56 of these were sold at auction and that these 56 were sold for $23,086.

This testimony was based on Alfred Barth comparing a list purportedly received from Farm Loan Service by Barth's counsel with a list furnished by Mrs. Billings to Alfred Barth. PCA objected to the lists and any testimony with respect to specific cows from Mrs. Billings. The court took PCA's objection under advisement and allowed Mr. Barth to be examined relative to it.

The trial court's memorandum decision does not indicate what its rulings on these objections and on the admissibility of the lists were. However, the court did state that Barth had the burden of establishing how many of the cows it sold to Billings were sold at auction and that it did not meet this burden. This would indicate that the court sustained the objections and ruled the list inadmissible. *Rosenberg v. Sheahan* (1912), 148 Wis. 92, 133 N. W. 645.

The lists were inadmissible under the hearsay rule. PCA was entitled to cross-examine the authors of the lists. *Heyse v. Heyse* (1970), 47 Wis. 2d 27, 34, 176 N. W. 2d 316. Because the lists were the basis for Barth's testimony as to how many and for what price the cows in question were sold, this testimony was also inadmissible and did not constitute proof of the number of cows sold and the amount received for them. *Trustees of University Co-operative Co. v. Madison* (1939), 233 Wis. 100, 111, 288 N. W. 742. 31A C. J. S., *Evidence,* p. 568, sec. 200.

Because the only evidence on the number and sale price of the cows in which Barth claims security interests which were sold at auction was not admissible, Barth has failed to meet its burden in this regard. Therefore, even if this court were to determine that Barth had a security interest in the cows sold to Billings, Barth would not be entitled to judgment.

*Proceeds.*

Barth's case is weakened by the failure to check the box on the financing statement forms that the proceeds of the collateral are also covered. Sec. 409.306 (3), Stats. 1971, provides:

"The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless:
"(a) A filed financing statement covering the original collateral also covers proceeds; or
"(b) The security interest in the proceeds is perfected before the expiration of the 10-day period."

The record does not indicate that the steps necessary to maintain a perfected security interest in the proceeds were taken.

Therefore, even if we held Barth had perfected purchase money security interests in some of the cows and had proven that those cows were included in the auction sale, it would not have an interest in the proceeds which would have priority over PCA's claim.

This rule on proceeds has been amended by Laws of 1973, ch. 215, secs. 27 and 42. Now a security agreement gives the secured party the rights to proceeds unless otherwise agreed. These amendments to the statutes governing secured transactions did not become effective until July 1, 1974, however, and, therefore, have no effect in this case where the decision was dated November 2, 1973.

*Costs.*

The rules of this court require the appellant to print a brief and appendix. Among other things, the appendix must include an abridgment of the appeal record, including the transcript. Sec. 251.34 (5) (c), Stats. The appellant's brief here contains no abridgment of the transcript. In *Martin v. Martin* (1970), 46 Wis. 2d 218, 221, 174 N. W. 2d 468, the appellant neglected to provide an adequate appendix and this court said:

"Henceforth, the court will see fit to affirm without opinion, and upon motion, impose double costs for these derelictions."

However, in *Olbert v. Ede* (1968), 38 Wis. 2d 240, 244, 156 N. W. 2d 422, this court said:

". . . Additional costs or penalties are to be imposed only 'Where it satisfactorily appears that the rules relating to the preparation and printing of a brief, including the appendix, have been flagrantly disregarded or there is an absence of a good faith attempt to comply therewith . . . .' Sec. 251.38 (2), Stats."

94

In the instant case, the omission of an abridgment of the testimony cannot be classified as flagrant. There was no serious dispute as to the facts. Double costs will not be allowed.

*By the Court.*—Judgment affirmed.