379 So.2d 1284 (1978)
The BARNETT BANK OF TALLAHASSEE, Appellant,
v.
Albert V. APPLEGATE, Phyllis J. Applegate, His Wife, and Lewis C. Schacht, Appellees.
No. HH-210.
District Court of Appeal of Florida, First District.
October 17, 1978.
Julius F. Parker, Jr. of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, for appellant.
Stanley Powell of Douglass, Powell & Davey; Guyte P. McCord, III, Sam Spector of Spector & Tunnicliff, Tallahassee, for appellees.
*1285 ERVIN, Judge.
Barnett Bank appeals, and Lewis C. Schacht cross-appeals from a final judgment holding that the appellees Applegates have a superior lien to that of Barnett Bank upon 140 head of cattle removed by Schacht from certain premises leased to Schacht by the Applegates and thereafter sold by Schacht to certain third persons in violation of a vendor's security interest in the cattle executed by Schacht in favor of the Applegates.
On January 26, 1974, the Applegates and Lewis Schacht entered into a memorandum agreement in which it was agreed that the Applegates would sell approximately 550 cows, calves and bulls to Schacht for the sum of $100,000, $10,000 payable forthwith and $10,000 per year for nine additional years commencing January 1, 1975, with interest on the unpaid balance at 8% per year. As security for the agreement, Schacht agreed that the Applegates had a vendor's security interest on both the herd and its progeny. It was further agreed that Schacht would not permit the total number of cattle to decrease to a number which bore the same relation to the original price as the unpaid principal of the purchase price bore to the original price. The security agreement was recorded in the public records of Jefferson County on February 11, 1974. The security agreement as filed made no reference to proceeds obtained from sale of the cattle. On February 20, 1976, the Applegates filed a complaint against Schacht in which it was alleged that on January 1, 1976, Schacht failed to make the payment due under the terms of the agreement; that on December 25 and 26, 1975, Schacht caused to be removed from the Applegates' premises between 140 and 210 cattle from the premises leased, in violation of the lease agreement, thereby decreasing the herd left on the premises to 245 head cattle; that there was owing to the Applegates the sum of $86,400 pursuant to the terms of the agreement or 80% of the original principal debt; that Schacht had decreased the herd to less than the number required to be maintained at all times on the premises (It was alleged that as of January 1, 1976, the date of the breach, no less than 440 cows should have remained on the premises as security.); that Barnett Bank was made a party to the complaint by reason of a security agreement given to the Barnett Bank of Tallahassee by Schacht on December 28, 1975, upon 275 yearling calves; that those cattle were subject to plaintiff's prior vendor's lien to the extent that the removal of such cattle decreased the herd on the premises of the plaintiff's below 440 head. The complaint requested that the court determine the respective lien rights of the parties to the cattle, order defendant to pay to the plaintiffs within a time certain the sum of $80,000, together with interest at the rate of 8% from January 1, 1975 until date of payment and, in the event of Schacht's failure to pay within the time allotted, order the cattle subject to the plaintiff's lien be sold at a time and place in accordance with the conditions specified, and that if the funds produced from the sale of the cattle were not sufficient to pay the amount due the plaintiffs, enter a deficiency judgment against Schacht.
The cause was tried non-jury before the court and no transcription was made of the testimony. The court found from the evidence: (1) On January 1, 1976, Schacht failed to pay when due a cattle payment of $10,000 principal, together with accrued interest in the amount of $6,400. (2) The failure to pay the cattle payment entitled the Applegates to repossess the herd. (3) Only 265 head were returned to plaintiffs, 175 cattle less than plaintiffs were entitled at the time of the breach. (4) At least 140 head of cattle were removed from the premises by Schacht between Christmas day, 1975 and his abandonment of the premises in mid-January, 1976, and that those cattle were subject to the lien of the plaintiffs recorded on February 11, 1974, which was superior to that of Barnett Bank of Tallahassee, recorded on December 31, 1975. (5) The amount due under the terms of the agreement for the purchase of the cattle was $80,000 plus interest at the rate of 8% per annum from January 1, 1975, and *1286 that the plaintiffs had a lien upon the 140 head of cattle removed by defendant Schacht from the premises and thereafter sold on April 28, 1976, in the amount of $16,233.36 and on April 20, 1976, in the amount of $6,496.75. (6) The funds from the cattle's sale were received by the Barnett Bank of Tallahassee months after being joined as a party to the cause, and that the Applegates' superior lien caused Barnett Bank to hold the funds in trust for the plaintiffs to the extent that a deficiency may exist upon the principal and interest due the plaintiffs.
Barnett argues that under the provisions of Section 679.9-306, Florida Statutes (1975), it is entitled to retain the proceeds of collateral sold by the debtor and paid to Barnett. Section 679.9-306(2) provides that a security interest continues in collateral notwithstanding its sale unless the action was authorized by the secured party in the security agreement. Barnett argues since the Applegates' security agreement involving the sale of the cattle provides that a person who buys any of the cattle in the ordinary course of business will take them free of the security interest created, that the secured party in effect authorized the sales of the cattle which occurred on April 28 and April 30, 1976, and lost any priority as to the cattle or the proceeds from their sale.
Barnett's first point is without merit. While Section 679.9-306(2) permits a continuing security interest in collateral notwithstanding sale unless the debtor's action was authorized by the secured party, the statute merely provides that upon default a secured party has the option of recovering either the proceeds or collateral after an unauthorized sale. If, however, the secured creditor authorizes the sale, his security interest in the collateral is extinguished, but his interest continues in the proceeds obtained from the sale of the collateral. In re Kittyhawk Television Corp., 383 F. Supp. 691, 694 (S.D. Ohio 1974); see also Anderson, Uniform Commercial Code, § 9-306:4 (1971).
Next Barnett points out that Section 679.9-306(3) provides a security interest in proceeds ceases to be perfected 10 days after receipt of the proceeds by the debtor unless a filed financing statement covering the original collateral also covers proceeds, or the security interest in the proceeds is perfected before the expiration of the 10 day period; therefore the Applegates' security interest in the proceeds derived from the sale of the cattle was not perfected since (1) the memorandum agreement did not cover proceeds of the sale or (2) a financing statement was not filed by them within 10 days after the sale. Barnett notes that it properly filed a financing statement covering the collateral and the proceeds of the collateral and therefore had a perfected security interest in both insofar as its lien applied to the 275 calves. It argues that the trial court's rationale for imposing a constructive trust upon the proceeds of the 140 cattle sold was apparently based on the fact that Barnett was a party to the litigation at the time the cattle were sold.
We agree with Barnett that the Applegates lost any priority in the proceeds from the sale of the collateral when (1) their financing statement failed to make any reference to proceeds obtained from sale of the collateral and (2) they failed to perfect a security interest in the proceeds within 10 days after the sales as required by Section 679.9-306(3)(b). Barnett's security interest in the proceeds remains perfected because, unlike that filed by the Applegates, its financing statement covered proceeds. Section 679.9-306(3)(a). The same section of the Uniform Commercial Code was construed by the Wisconsin Supreme Court in Barth Brothers v. Billings, 68 Wis.2d 80, 227 N.W.2d 673 (1975). There, a credit company loaned Billings money in 1969. The credit company perfected a security interest in some of Billings' possessions, including all of his cattle, both then existing and which Billings might later acquire during the life of the note, as well as in the proceeds from the sale of the cattle. Barth sold Billings some cattle in 1971 and 1972, and filed financing statements on the cattle sold to secure three notes which Billings *1287 had given Barth. The financing statements, however, did not cover proceeds from the sale of the collateral. Later, Billings sold the cattle to certain third persons. When Billings defaulted in his payments on the note, Barth brought an action in which he alleged his security interest in the cattle was superior to that of the credit company. The court found first that Barth had no security interest in the cattle since there was no evidence that the security agreement existed. Second, even assuming the existence of such an interest, and assuming Barth's superior interest in the cattle he sold Billings, after Billings later sold the cattle, the proceeds of which were not subject to a perfected interest of Barth's, who failed to secure his interest within 10 days after the sale, the credit company's perfected security interest in those proceeds became superior to Barth's unperfected interest.
It is true that the facts in Billings are somewhat different from those here in that no action was filed, as here, making the lending institution a party defendant to an action seeking to determine the priority of the respective liens. The fact that Barnett was on actual notice by being joined as a party defendant in a suit where the Applegates claimed their lien to be superior to Barnett's prior to the sale of the cattle and receipt of the proceeds from Schacht, does not affect the priority of its lien. Section 679.9-301 states generally that an unperfected security interest is subordinate to the rights of secured creditors. The only classification of creditors who may become subordinate to a person holding an unperfected security interest is a lien creditor who, before becoming so, has knowledge of another's prior unperfected interest. A lien creditor is defined in Section 679.9-301 as a creditor "who has acquired a lien on the property involved by attachment, levy or the like... ." Obviously Barnett does not come within the above definition. It is rather a secured creditor and is entitled to priority under Sections 679.9-301 and 679.9-312.
The court's finding that a constructive trust arose by operation of law is not supported by the facts. A constructive trust is imposed against one who, by actual or constructive fraud, by duress or abuse of confidence, or by any form of unconscionable conduct, artifice, concealment, or questionable means, has acquired the legal right to the property he ought not, under equitable principles, hold and enjoy. 33 Fla.Jur., Trusts, § 61 (1960). Barnett violated no legal, or, for that matter, any equitable principles by perfecting its security interest upon the collateral and the proceeds therefrom which secured the loan. This was its legal right. There is no evidence of any unfair dealing, fraud or otherwise by Barnett which affected the Applegates' rights. Nor did it do violence to any equitable principle by receiving the proceeds from Schacht from the sale of that collateral to which its perfected security interest applied.
That portion of the lower court's final judgment determining that the Applegates' lien was superior to that of Barnett's, and holding that the proceeds obtained by Barnett from the sale of the cattle should be held in trust for the Applegates is reversed.
MILLS, Acting C.J., and MELVIN, J., concur.