## Ace Hotel & Bar Supply Co., Inc. v. Gerontianos

*Alfred S. Pierce*, for plaintiff.
*Howard Epstein*, for defendants.

WILLIAMS, *P.J.*, June 23, 1980—This matter comes before the court on the petition of the Second

National Bank of Nazareth to set aside plaintiff's writ of execution.

The record establishes that on March 15, 1977 defendants entered into a construction mortgage in the sum of $110,000 with the Second National Bank of Nazareth. Thereafter, the bank periodically advanced various sums of money to defendants, who planned to use the mortgaged premises as a restaurant.[1] By the end of 1977, the bank had advanced a total of $110,000 pursuant to the mortgage agreement and had received demand notes for that amount in return.

In August of 1977 defendants began to receive proposals concerning the furniture and equipment necessary for the operation of their restaurant. On August 4 defendants executed an agreement which gave the bank a security interest in "[a]ll furntires [sic], fixtures, inventory, machinery, and equipment, now owned or hereafter acquired, together with all accessories, substitutions, additions, replacements, parts and accessions, and account receivable." The collateral secured a demand note in the sum of $110,000. The bank filed financing statements on August 12 and August 25, 1977. The bank did not advance any additional money to defendants on the basis of the security agreement.

Ace Hotel and Bar Supply Co., Inc. supplied furniture and kitchen equipment to defendants. In December of 1977 defendants entered into a security agreement with Ace Hotel to secure this furniture and equipment. Ace Hotel did not file its financing statements until March 17, 1978. Following de-

1. When the mortgage agreement was entered into, defendants had a leasehold interest in the property. They acquired ownership of the property sometime before November of 1978.

fendants' default on their payments, Ace Hotel instituted suit and obtained a judgment against defendants on October 2, 1978.

Defendants had also defaulted on their mortgage payments to the bank. In November of 1978 defendants entered into a mortgagee-in-possession agreement with the bank. The bank notified Ace Hotel of this agreement and of the fact that, as first lienholder, it had instituted repossession of the equipment under the Uniform Commercial Code. Approximately two weeks later, the bank held a private sale and paid $1.00 for "all furniture, fixtures, machinery, and equipment. . . ." Ace Hotel was not notified of the proposed sale of the collateral. After the sale, the bank allowed the furniture and equipment to remain on the premises and to be used by defendants.

On January 18, 1980 Ace Hotel caused the sheriff to levy on the furniture and equipment located at defendants' premises. Everything included in the levy had already been repossessed by the bank,[i] however, and the bank filed a petition to set aside the writ of execution.

Ace Hotel contends that the bank, which is ostensibly the owner of the disputed property as the result of the private sale, may not assert its interest through a petition to strike the levy. Ace Hotel alleges that the proper procedure is for the bank to file a sheriff's interpleader. The procedure followed in this case has not prejudiced Ace Hotel in any way. The record is sufficient to allow us to make a decision on the merits of this case. Although Ace Hotel's argument may be technically correct, we find no reason to further complicate this matter by requiring the bank to file a sheriff's interpleader. At the hearing held on February 6, 1980, Ace Hotel ac-

knowledged the bank's right to intervene. We, therefore, elect to ignore any procedural irregularity.

The first question which we must consider is whether the bank's security interest takes priority over Ace Hotel's security interest. Ace Hotel, which had a purchase money security interest,[2] concedes that it is not entitled to that priority because it did not perfect its security interest within ten days after defendants received possession of the collateral. See 13 Pa.C.S.A. §9312(d). Ace Hotel asserts, however, that the bank's security interest was not perfected.

Under the Uniform Commercial Code (UCC), a security interest is perfected when "it has attached and when all of the applicable steps required for perfection have been taken." Id., §9303(a). A security interest cannot attach to collateral until there is an agreement that the interest attach, value is given, and the debtor has rights in the collateral. Id., §9204(a). Ace Hotel questions whether value was given for the bank's security interest. If value was not given, the bank's security interest has not attached and has not been perfected. Thus, the bank's unperfected interest would be subordinate to Ace Hotel's perfected interest. Id., §9303(a). In support of its position that value was not given, Ace Hotel points out that all of the money received by defendants from the bank had been advanced pursuant to the mortgage agreement.

When the bank and defendants entered into the security agreement, defendants executed a demand note in the sum of $110,000. The note and the security agreement further secured the $110,000 advanced pursuant to the mortgage agreement. The

2. See 13 Pa.C.S.A. §9107(1).

UCC provides that a person gives value for rights if he acquires them "as security for . ... a pre-existing claim." Id., §1201. The bank acquired rights based upon the demand note and the rights were acquired as security for the already existing claim for $110,000. Thus, the bank did give value: General Motors Acceptance Corp. v. Washington Trust Co. of Westerly, ____ R.I. ____, 386 A. 2d 1096 (1978); Barth Brothers v. Billings, 68 Wis. 2d 80, 227 N.W. 2d 673 (1975).

Both the bank and Ace Hotel perfected their security interests by filing financing statements. Under section 9312(e) of the UCC, 13 Pa.C.S.A. §9312(e), the priority between their conflicting interests is determined in the order of filing. The bank filed its financing statements in August of 1977, approximately seven months before Ace Hotel filed its financing statements. Therefore, the bank's security interest takes priority over Ace Hotel's security interest.

As a secured party, the bank had the right to take possession of the collateral upon defendants' default. Id., §9503(a). It exercised this right in November of 1978, more than one year before Ace Hotel had the sheriff levy upon this same property. Since the bank had a superior right to the collateral which was legally in its possession at the time of the levy, the sheriff had nothing upon which to levy and the levy is a nullity.

Our resolution of this matter, however, requires further discussion of the steps taken by the bank after it repossessed the collateral. The UCC allows a secured party to do one of two things after repossessing collateral. The secured party may either dispose of the collateral or it may propose to retain the collateral in satisfaction of the obligation: 13 Pa.C.S.A. §§9504, 9505. In the case before us, the

bank elected to dispose of the collateral. Under the code, disposition of the collateral may be by a public or private sale, but every aspect of the disposition must be commercially reasonable. The secured party must give reasonable notification of the time and place of any public sale or the time after which any private sale is to be made. This notice must be given to the debtor and any other person who has a security interest in the collateral. Id., §9504(c). If it is established that the secured party is not proceeding in accordance with these provisions, disposition may be ordered or restrained on appropriate terms and conditions. Id., §9507(a).

The bank purportedly disposed of the collateral at a private sale to itself. The sale occurred at the bank and Ace Hotel was not notified of the proposed sale. The bank bought all of the collateral for $1.00. In our opinion, the method, manner, time, place, and terms of this sale were not commercially reasonable. In addition, the bank did not comply with the notification provisions of section 9504(c). The facts establish that the bank totally disregarded the provisions of the UCC. We, therefore, hold that the bank's sale of the collateral to itself is invalid. Since the bank by its actions indicated that it wished to dispose of the collateral, we believe that it should now make that disposition in accordance with the provisions of section 9504.

Wherefore, we make the following

## ORDER

And now, June 23, 1980, the petition of the Second National Bank of Nazareth to strike the sheriff's levy and set aside the execution is granted. The Second National Bank of Nazareth is hereby

directed to dispose of the collateral in accordance with the provisions of 13 Pa.C.S.A. §9504 within 30 days from the date of this order.

