AMERICAN WOOD DRYERS, INC., Plaintiff,

v.

BOMBARDIER CAPITAL, INC., Defendant.

No. 02–C–129–C.

United States District Court, W.D. Wisconsin.

Nov. 26, 2002.

required to disclose the amount of every monthly payment plaintiff would be required to make over the life of the loan.

Valerie L. Bailey-Rihn, Madison, WI, for Plaintiff.

Katherine Stadler, La Follette, Godfrey & Kahn, S.C., Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for declaratory and injunctive relief. Plaintiff American Wood Dryers, Inc. seeks a declaration regarding its rights and as against those of defendant Bombardier Capital, Inc. to the proceeds of a dry kiln located in Ashland County, Wisconsin. The current owner of the land on which the kiln is located, Woodland Forest Products, Inc., had been making payments to plaintiff for the kiln until plaintiff filed this lawsuit. After that, Woodland deposited $56,000 in an escrow account with this court, pending resolution of the dispute. Jurisdiction is present under 28 U.S.C. § 1332, diversity of citizenship.

Both parties have filed motions for summary judgment. In addition, plaintiff has moved for an order releasing the escrow funds and paying them to plaintiff. Because I conclude that plaintiff's security interest has priority over defendant's security interest, I will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment. However, I will deny plaintiff's motion for release of the escrow funds. Although plaintiff's interest has priority over defendant's interest, plaintiff has not shown that there are no other parties that are entitled to the proceeds of the kiln or that it has followed the procedures under Wisconsin Statutes chapter 409 for enforcing its interest. (Chapter 409 was substantially amended in 2001 in order to adopt revisions made to Article 9 of the Uniform Commercial Code. See 2001 Wis. Act 10, § 78. However, these amendments did not take effect until after the events relevant to this action occurred. Therefore, all references to the Wisconsin Statutes are to the 1999–2000 version.) The escrow funds will be returned to Woodland Forest Products.

From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff American Wood Dryers, Inc. is an Oregon corporation with its principal place of business in Clackamas, Oregon. It manufactures and sells industrial lumber kilns. Defendant Bombardier Capitol, Inc. is a Massachusetts corporation with its principal place of business in Jacksonville, Florida.

In August 1998, plaintiff entered into a contract with Scribner Wood Products to manufacture and install three dry kilns on Scribner's property in Ashland County, Wisconsin. Todd Scribner, d/b/a Scribner Wood Products, arranged financing through American Eagle Financial Group for one of the kilns, a 40,000 BF High Performance kiln. (The other two kilns were financed separately and are not at issue.) In December 1998, Scribner entered into an agreement with American Eagle under which American Eagle purported to lease the kiln to Scribner. The

agreement called for 60 equal payments and a down payment representing the first and last payment. After making the final payment, Scribner would be entitled to retain possession of the kiln. Plaintiff was not a party to the "lease agreement."

Plaintiff invoiced the kiln to American Eagle but shipped the kiln to Scribner. Neither American Eagle nor Scribner sent payment to plaintiff for the kiln. In March 1999, American Eagle filed a UCC–1 financing statement with the Wisconsin Department of Financial Institutions describing the kiln. Also in March, American Eagle assigned the lease to defendant in return for $95,000.

After trying to obtain payment for the kiln from both Scribner and American Eagle in May 1999, plaintiff notified Scribner of its intent to file a lien because it had not received payment; in July 1999, plaintiff filed a claim for a construction lien on Scribner's property in the Circuit Court for Ashland County. The construction lien stated a balance due on the kiln of $83,621.27.

In March 2000, other holders of liens against Scribner's property commenced a foreclosure action. Plaintiff was named as a party but defendant and American Eagle were not. In its answer, plaintiff claimed that its lien was prior to all other claimants' interest in the kiln. However, the parties agreed to exclude the kilns from the judgment. After the sale, plaintiff entered into a lease contract with Woodland Forest Products, Inc., who became the new owner of the Scribner property. Under the agreement, Woodland would lease and potentially purchase the kiln. Pursuant to the agreement, Woodland began making payments to plaintiff, totalling $34,000. The balance remaining is $56,000, which Woodland has paid into the court, fearing liability to multiple parties.

Both American Eagle and Scribner filed Chapter 7 bankruptcy petitions: American Eagle in 1999 and Scribner in 2001. Neither Scribner nor American Eagle listed the kiln as property of its bankruptcy estate. Scribner identified the kiln as having been repossessed by plaintiff.

## OPINION

### A. Declaratory Judgment Act

■ Because plaintiff is seeking declaratory relief, I must first determine whether this action presents an "actual controversy" within the meaning of 28 U.S.C. § 2201(a). If plaintiff is merely seeking an advisory opinion, then no actual controversy exists and this court is without subject matter jurisdiction under Article III to hear the case. *Hyatt International Corp. v. Coco*, 302 F.3d 707, 711–12 (7th Cir.2002). Whether the case presents a justiciable controversy depends on whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). "[I]f the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).

■ Although the parties have not briefed this issue, it is clear that plaintiff and defendant have adverse legal interests of sufficient immediacy. Both parties assert that they are entitled to the proceeds of the kiln. Woodland has already begun making payments to plaintiff for the kiln but has put the balance into an escrow

account to avoid being subject to competing claims. Without a declaration of the parties' rights, the kiln's proceeds will remain frozen and the dispute unresolved. Therefore, I conclude that the requirement of 28 U.S.C. § 2201(a) is satisfied.

### B. *Choice of Law*

The parties did not brief the issue of the substantive law that should apply in this case. However, both parties have cited only Wisconsin law, suggesting they agree that Wisconsin law should apply. Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), when diversity of citizenship is the basis for subject matter jurisdiction, the district court looks to the law of the forum state to determine which state's substantive law should be applied. Wisconsin courts presume that Wisconsin law applies unless it is clear that non-forum contacts have greater significance. *State Farm Mutual Auto. Insurance Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis.2d 561, 641 N.W.2d 662. Although neither party is a citizen of Wisconsin, all of the events giving rise to the suit occurred in this state. Therefore, I agree with the parties' implicit contention that Wisconsin law applies.

### C. *Rights of the Parties to Kiln Proceeds*

The issue to be decided is whether plaintiff or defendant has a superior interest in the proceeds of the kiln. Looking at the dispute as an equitable matter, it would appear that both parties are entitled to some compensation. Plaintiff manufactured and installed a product for which it was never paid and defendant paid $95,000 for the rights under an agreement for which it has never received a benefit. The parties responsible for these events appear to be insolvent, leaving plaintiff and defendant to fight between themselves over who will ultimately bear the loss (while Wood-

land is caught in the cross-fire). It is unfortunate that a mutual agreement could not be reached without litigation. The law regarding liens and security interests is replete with technical requirements and does not insure that all lenders will compensated.

As a preliminary matter, I note that although the parties acknowledge that both Scribner and American Eagle filed for bankruptcy, they do not discuss what effect, if any, those proceedings had on their interests in the kiln. However, even property subject to a security interest becomes part of the "property of the estate" under the Bankruptcy Code and thus may be affected by the bankruptcy proceedings. *See* 11 U.S.C. § 541(a). Both parties appear to assume in their briefs that the bankruptcy trustee abandoned any interest in the kiln and therefore left plaintiff's and defendant's interests untouched. *See* 11 U.S.C. § 554. Although it is undisputed that neither Scribner nor American Eagle listed the kiln as part of its bankruptcy estate, the parties have proposed no facts establishing that the proceeds to the kiln were not administered by the bankruptcy court. Because I cannot conclude from the record whether the bankruptcy proceedings affected plaintiff's or defendant's interest in the kiln, this opinion is limited to deciding the parties' rights to the kiln proceeds *relative to each other*. In other words, I will decide only whether plaintiff's or defendant's interest has priority over the other. I express no opinion whether the bankruptcy proceedings may have affected plaintiff's or defendant's interest in the kiln or whether there are persons other than the parties in this case who may have an interest in the kiln.

#### 1. *Plaintiff's interests*

##### a. Woodland contract

Plaintiff asserts several bases for its right to the kiln proceeds: (1) its contract

with Woodland Forest Products; (2) its construction lien on the Scribner property; and (3) its sales agreement with Scribner. First, plaintiff argues briefly that "the money at issue arises from American Wood Dryers' contractual right to receive lease payments from Woodland Forest Products." Because defendant is not a party to the contract between plaintiff and Woodland, plaintiff contends, defendant has no interest in the lease payments. Plt.'s Br., dkt. # 12, at 9 n. 3; Plt.'s Reply Br., dkt. # 27, at 10. I find this argument confusing because it appears to ignore plaintiff's own request for relief. Plaintiff is not seeking a declaratory judgment with regard to the parties' rights under plaintiff's contract with Woodland. Rather, plaintiff is seeking a declaration "as to the respective rights of the Parties to the 38,-000 board foot capacity maximum performance whitewood kiln manufactured by American Wood Dryers, Inc. and installed at Scribner Wood Products." Plt.'s Cpt., dkt. # 2, at 7. Therefore, the issue is not whether defendant is a party to the contract but more generally who is entitled to the kiln proceeds. If plaintiff entered into an agreement with Woodland for the kiln proceeds even though plaintiff did not have an interest in the kiln, then it was selling something it did not have a right to sell and the contract is not determinative. See Wis. Stat. § 409.306(2) ("Except where this chapter otherwise provides, a security interest continues in the collateral notwithstanding sale, exchange or other disposition thereof unless the sale was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.") Instead, it must be decided which party has a valid interest in the kiln, and if both parties do, which party's interest has priority over the other.

b. Construction lien

■ Under Wisconsin's construction lien law, Wis. Stat. §§ 779.01–17, anyone who provides labor and materials for "improvements" to real estate may file a lien against the real estate if he or she does not receive payment. See Wis. Stat. 779.01(3); H.L. Munch Co. v. Anderson, 111 Wis.2d 194, 199, 330 N.W.2d 768, 771 (1983). "If properly perfected, this lien, known as the construction lien, becomes an encumbrance against the real estate in the same manner as a mortgage or a judgment lien encumbers the real estate." Steven W. Martin, Wisconsin Construction Lien Law Handbook 1 (2d ed.2000); see Wis. Stat. § 779.09. A properly perfected construction lien has priority over an unperfected security interest. Wis. Stat. § 409.313(7). Because construction liens are statutory creations rather than consensual transactions, they must be perfected in compliance with chapter 779 or they are not enforceable. See Goebel v. National Exchangors, Inc., 88 Wis.2d 596, 606, 277 N.W.2d 755, 760 (1979); see also Wes Podany Construction Co., Inc. v. Nowicki, 120 Wis.2d 319, 324, 354 N.W.2d 755, 758 (1984) ("One pursuing rights under the Wisconsin construction lien law must follow the statute or lien rights fail.")

■ Defendant does not dispute that the kiln is an "improvement" within the meaning of Wis. Stat. § 779.01(2)(a) or otherwise argue that a construction lien was unavailable to plaintiff. Instead, defendant contends that plaintiff's lien is invalid because plaintiff did not bring an action to enforce the lien within two years of filing the claim as required by Wis. Stat. § 779.06(1). Plaintiff disagrees, arguing that the statutory requirement is satisfied by the March 2000 foreclosure action, to which plaintiff was a party.

Although the case law on this issue is sparse, plaintiff appears to be correct that Wis. Stat. § 779.06(1) does not require each lien claimant to bring an action within two years. So long as one lien claimant commences a foreclosure action within the statutory time period and all necessary parties are joined, the claims of other lien claimants are preserved. *See Erickson v. Patterson*, 191 Wis. 628, 211 N.W. 775 (1927).

In *Erickson*, one lien claimant brought an action to enforce its lien within the limitations period. A second lien claimant was joined after the limitations period expired, and the debtor argued that his claim was barred. Holding that the second claim was timely because the statute of limitations was tolled by the first claim, the court resolved both claims. In the present case, however, the difficulty is that the kiln was not part of the March 2000 foreclosure action and the rights to the kiln and its proceeds were never determined, so it is not just a matter of a claim that was joined after the deadline. Obviously, if the rights to the kiln had been decided by the circuit court, this action would not have been necessary. Although it makes sense not to require each lien claimant to bring its own action, when the basis for a party's lien is not addressed in the foreclosure action, it is difficult to argue that an action to enforce the lien has been brought, whether by plaintiff or anyone else. Plaintiff does not argue that it was prevented from asserting its lien in the foreclosure action. Rather, the parties agreed to exclude the kiln from the judgment. At most, plaintiff could argue that, under *Erickson*, the statute of limitations was tolled while the foreclosure action was proceeding. By choosing not to prosecute its claim in the foreclosure action or otherwise adjudicating it, plaintiff failed to comply with Wis. Stat. § 779.06(1). As a result, plaintiff's construction lien is not enforceable.

c.  Sale of the kiln

Plaintiff contends that, in addition to the construction lien, it "has an unperfected security interest arising from its sale of the Kiln [to Scribner] and its reservation of the title until paid in full." Plt.'s Reply Br., dkt. # 28, at 9. A "security interest" is "an interest in personal property or fixtures that secures payment or performance of an obligation." Wis. Stat. § 401.201(37). "A creditor who has a security interest in property of a debtor is a secured party and thus enjoys all the rights that [Wisconsin Statutes] chapter [409] accords secured parties with respect to their collateral." *In re Cilek*, 115 B.R. 974, 992 (Bkrtcy.W.D.Wis.1990). A perfected interest has priority over an unperfected interest. Wis. Stat. § 409.312. "A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." Wis. Stat. § 409.303(1). A lender with the security interest that has the highest priority has a number of remedies available, including repossession and sale of the collateral in order to satisfy the debt. Wis. Stat. § 409.504. The owner of the collateral is entitled to any surplus that the sale generates. Wis. Stat. § 409.112.

A security interest does not arise automatically from a sale. Rather, before a security interest can be enforced, it must "attach" to the collateral (in this case, the kiln). A security interest attaches when (1) the debtor has either signed a security agreement that contains a description of the collateral or given the lender possession of the property; (2) the lender has given value to the debtor; and (3) the debtor has rights in the collateral. Wis. Stat. § 409.203(1).

It is undisputed that plaintiff gave value to the debtor and that Scribner had rights in the collateral. It is also undisputed that plaintiff did not retain possession of the kiln. The parties dispute whether plaintiff and Scribner had a security agreement. The formal requirements for a security agreement are few. It must be signed by the debtor and contain a description of the collateral. In addition, it must evince the parties' intent to create a security interest, though no particular language is required. *See* Wis. Stat. § 409.102(1)(a); *National Operating, L.P. v. Mutual Life Insurance Co. Of New York*, 2001 WI 87, ¶¶ 33–35, 51, 244 Wis.2d 839, 630 N.W.2d 116; *Barth Brothers v. Billings*, 68 Wis.2d 80, 88, 227 N.W.2d 673, 677 (1975).

■■ Defendant contends that these requirements were not met, but it provides no explanation for its position. The record shows that plaintiff's sales agreement with Scribner is signed by Scribner and contains a description of the kiln. The agreement does not use the exact words "security agreement" or "security interest," but the agreement demonstrates nevertheless that the parties intended that a security interest be created. The agreement states: "To secure payment of principal and interest due under this contract, title to the goods, and all parts thereof, remains in possession of Seller until the entire amount of money involved in this transaction is paid in full to the Seller." Aff. of Katherine Stadler, Ex. K, dkt. # 26, § 4, at 2. Under Wis. Stat. §§ 401.201(37) and 402.401(1), the seller cannot retain the title to the goods after they have been delivered. Instead, a seller's reservation of title "is limited in effect to a reservation of a security interest." *Id.* Therefore, by reserving title to the goods, plaintiff retained a security interest in the kiln.

Plaintiff concedes that it never took the necessary steps to perfect its security interest. Although failure to perfect a security interest does not invalidate it, an unperfected security interest is subordinate to one that is properly perfected. Wis. Stat. §§ 409.301 and 409.312; *see also Barth Brothers*, 68 Wis.2d at 90, 227 N.W.2d at 679. Thus, the next question is whether defendant also has a security interest in the kiln and, if so, whether defendant's interest has priority over plaintiff's.

2. *Defendant's interest*

a. Defendant's "lease agreement" with American Eagle

■■ It is undisputed that Scribner and American Eagle intended to give American Eagle a security interest in the kiln when they entered into a "lease agreement" for the kiln. "True leases" do not create a security interest. *In re Spring Valley Meats, Inc.*, 94 Wis.2d 600, 609, 288 N.W.2d 852, 856 (1980); *American Industrial Leasing Co. v. Moderow*, 147 Wis.2d 64, 69–70, 432 N.W.2d 617, 619–20 (1988). However, the label given by the parties to a document is not determinative. *In re Michaels*, 156 B.R. 584, 592 (Bkrtcy. E.D.Wis.1993); *see also* Wis. Stat. § 409.102. In this case, because Scribner had a right to retain possession of the kiln after the last installment payment, the document is more appropriately viewed as a security agreement than a lease. Wis. Stat. § 401.201(37)(b). Furthermore, because defendant purchased American Eagle's rights under the agreement, defendant acquired the interest of American Eagle in the kiln.

■■ Plaintiff agrees that defendant has all the rights that American Eagle would have, but it argues that American Eagle did not acquire a security interest in the kiln because it never gave value for the security interest, as required by Wis. Stat. § 409.203(1)(b). It is undisputed that

American Eagle made no payments to either plaintiff or Scribner for the kiln. In arguing that American Eagle did give value for the security interest, defendant points to Wis. Stat. 401.201(44)(d), which defines "value" as "any consideration sufficient to support a simple contract." The U.C.C. does not define "consideration" so I must look to the common law for guidance. *Matter of Van Kylen*, 98 B.R. 455, 462 (Bkrtcy.W.D.Wis.1989). Under Wisconsin law, consideration may consist of a benefit to the promisor or a detriment to the promisee. *First Wisconsin National Bank of Milwaukee v. Oby*, 52 Wis.2d 1, 6, 188 N.W.2d 454, 457 (1971); *Lovett v. Mt. Senario College, Inc.*, 154 Wis.2d 831, 837, 454 N.W.2d 356, 358 (1990). A promise is generally sufficient consideration so long as the promisor is not entitled to withdraw the promise at his or her discretion. *Oby*, 52 Wis.2d at 7, 188 N.W.2d at 457. Because it is undisputed that American Eagle agreed to finance the kiln for Scribner, I conclude that American Eagle obtained a security interest in the kiln, which was later assigned to defendant when defendant paid American Eagle $95,000 for its rights under the "lease agreement."

Plaintiff argues next that whatever security interest defendant had, it was "foreclosed as a result of the Sheriff's Sale of the Ashland County Property." Plt.'s Br., dkt. # 12, at 10. This argument fails for the same reason that I concluded that an action was never brought to enforce plaintiff's lien. Defendant's interest could not have been eliminated by the foreclosure action because that action never addressed anyone's rights to the kiln or its proceeds.

■ Defendant concedes that its security interest was not properly perfected. The parties agree that the kiln is a "fixture" within the meaning of the U.C.C. *See* § 409.313(1)(c) ("Goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law.") The procedure for perfecting a security interest in a fixture is distinct from the procedure for other types of goods. First, the creditor must file a financing statement with the Register of Deeds in the county in which the real estate lies. Wis. Stat. § 409.313(1)(b). In addition, the financing statement must show that it applies to a fixture, recite that it is to be filed in the real estate records and contain a legal description of the real estate. Wis. Stat. § 409.313(5). Although American Eagle did file a financing statement for the kiln, it filed it with the Wisconsin Department of Financial Institutions rather than the Register of Deeds and the statement did not contain a legal description of the property.

■ Despite American Eagle's error, defendant contends that its security interest is perfected nevertheless. It cites Wis. Stat. § 409.401(2), which states that filing in an improper place is still "effective" "against any person who has knowledge of the contents of such financing statement." This provision does not help defendant. First, there is no evidence that plaintiff actually knew of the contents of American Eagle's financing statement. *See* Wis. Stat. § 401.201(25a) (defining "knowledge" as "actual knowledge"). Even if plaintiff did have such knowledge, Wis. Stat. § 409.401(2) excuses only errors as to the place of filing; it would not allow defendant to escape the requirement that the statement include a description of the property. Thus, although both plaintiff and defendant have a security interest in the kiln, neither party perfected its interest.

■ When the competing security interests are all unperfected, the interest that attached first has priority. Wis. Stat. § 409.312(5)(b). Plaintiff identifies August 1998 as the date that its security interest

attached and defendant identifies March 1999 as the date its security interest attached. Neither party disputes the other's date. (Although the parties disagree on the date that plaintiff's asserted construction lien attached, this dispute is no longer material now that I have decided that plaintiff's lien is unenforceable). Therefore, to the extent that either date is incorrect, the parties have waived that argument. *See AAR International, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 526 (7th Cir.2001) (holding that contract provision was enforceable when parties failed to argue that it was not); *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999) ("Arguments not developed in any meaningful way are waived."); *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Bd.*, 957 F.2d 302, 305 (7th Cir.1992) (court has "no obligation to consider an issue that is merely raised, but not developed, in a party's brief"). As a result, I conclude that plaintiff's interest attached before defendant's and, therefore, has priority over defendant's interest. I will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.

### D. *Motion to Release Escrow Funds*

Although I have concluded that plaintiff's interest is superior to defendant's, I will deny plaintiff's motion for the court to order that the money in the escrow account be paid to plaintiff. As I noted above, it is not clear whether the bankruptcy proceedings may have had an effect on plaintiff's interest or whether another party may have an interest in the proceeds to the kiln. In addition, plaintiff has not shown that it complied with the requirements regarding default and enforcement under chapter 409. *See, e.g.,*

Wis. Stat. § 409.504(3) (prior to sale or disposition of collateral, lender must give notice to debtor and any other party claiming interest). Therefore, I cannot conclude that plaintiff is entitled to the kiln proceeds absolutely. The $56,000 placed in the escrow account shall be returned to Woodland Forest Products.

### ORDER
### IT IS ORDERED THAT

1. The motion for summary judgment filed by plaintiff American Wood Dryers, Inc. is GRANTED. It is DECLARED that plaintiff's security interest in the 40,000 BF High Performance kiln manufactured by plaintiff and installed at 13 South, Glidden, Wisconsin has priority over the security interest of defendant Bombardier Capital, Inc. in the kiln.

2. Defendant's motion for summary judgment is DENIED.

3. Plaintiff's motion for release of escrow funds is DENIED. The $56,000 placed in the escrow account by Woodland Forest Products, Inc. shall be returned to Woodland.