CONSOLIDATED DISCOUNT CORPORATION, Appellant, vs. HOLTON STREET STATE BANK, Respondent.

*May 14—June 15, 1945.*

154

For the appellant there was a brief by *Walter D. Corrigan, Sr., John S. Barry,* and *Thomas M. Corrigan,* all of Milwaukee, and oral argument by *Walter D. Corrigan, Sr.*

For the respondent there was a brief by *Kaumheimer, Alt & Likert* of Milwaukee, and oral argument by *Gifford Alt.*

ROSENBERRY, C. J. In its complaint the plaintiff alleged and upon this appeal the plaintiff contends that the transaction of August 2, 1941, between the plaintiff and Brill Uniforms was a purchase of an interest in the proceeds of the two contracts between Brill Uniforms and the United States government. This contention raises the principal question for decision upon this appeal. The decision of other questions raised are in the main dependent upon it. It is considered that the circuit court correctly held that the transaction was a loan. It said, among other things:

"In testing the force and applicability of counsel's contentions, this court has not only analyzed the evidence *aliunde* the writing of August 2, 1941, but has also given proper place to the chattel mortgage of the same date covering 'all machinery (and equipment) in the manufacturing plants and stores of said mortgagors [Brill Uniforms]' at two locations 'together with all machinery and equipment hereafter acquired and placed in said manufacturing plants and stores;' and the later chattel mortgage of October 18, 1941, also covering after-acquired machinery and equipment. All of these documents govern the same subject matter between the parties and must be treated as one contract. (*Blakeslee v. Rossman,* 43 Wis. 116, 122; *Boyden v. Roberts,* 131 Wis. 659, 666.) The second chattel mortgage given in October must be treated as in the nature of a contemporaneous instrument relating back to August 2, 1941, because it was given pursuant to, and in compliance with, the express provision of the earlier mortgage of that date.

"In this connection, certain features of the agreement of August 2, 1941, are also deemed significant:

"(a) The liquidated damages, so-called, assured to the plaintiff . . . as its maximum share of any surplus of the

proceeds derived from the deal were fixed and limited at $37,000. This was also emphasized by an interlineation which reads:

" 'In no event shall the party of the second part receive more than the sum of $37,000 from the proceeds of said contracts O.K.JTT, Sec. O.K.LBB.'

"(b) The unassigned share ($25\frac{1}{4}/62\frac{1}{4}$) of the government contracts left to Brill Uniforms was also assigned to the plaintiff to assure said maximum share of proceeds, namely, 'as collateral security for the performance by said first parties (the Brill's) of all of the terms and conditions of this agreement, *it being the intent and purpose hereof that the said second party shall at all times be fully secure.*"

The contract also provided for the giving of chattel mortgages covering all manufacturing equipment and machines, present and future, "to *secure* the performance of said contracts *and this agreement.*"

"Only $32,000 actually passed from the plaintiff to said Brill Uniforms and that sum was paid subject to the restriction in the agreement of August 2, 1941, that it was not to be used to pay pre-existing liabilities of the latter firm or of either partner 'except with the written consent of the party of the second part (plaintiff).' It is fair to say that purchase money, in an out-and-out sale, is customarily paid to the seller without string or reservation. This, and the other, *security* features in the transaction point to a pledge rather than to a sale. Moreover, the contract further provided that 'in no event' was more than a fixed maximum of $37,000 to come back to the plaintiff. The difference of $5,000 was referred to by the witness Alfons Klein, who kept all of plaintiff's books as 'a fee' carried on the account of plaintiff called 'Unearned Service Charges,' and that $5,000 would be the entire profit from the discount of the $37/62\frac{1}{4}$ of the contract."

In spite of the decision of the trial court and the convincing reasons given therefor, the plaintiff contends very insistently in this court that the language of the agreement of August 2, 1941, unquestionably stamps the transaction as a purchase and

sale and therefore excludes the possibility of a loan. This contention of the plaintiff cannot be sustained. The language of the contract of August 2, 1941, is no more controlling as to the nature of the transaction than the language of a warranty deed of lands given to secure payment of money which may be shown by parol to be in fact not a deed but a conveyance to secure a loan and therefore a mortgage. *Acme Brick Co. v. Jacobi-Erdman, Inc.,* (1940) 235 Wis. 539, 545, 292 N. W. 453.

The transaction of August 2, 1941, amounted to this: Brill Uniforms assigned to the plaintiff 37/62¼ of the proceeds of the government contracts in consideration of which the plaintiff advanced Brill Uniforms $32,000. Brill Uniforms further promised to pay 37/62¼ of the proceeds, not exceeding $37,000, to the plaintiff, the payment of which was further secured by the chattel mortgages already referred to. If the transaction had been carried out in accordance with the terms of the contract, the plaintiff would have been reimbursed for the advancement which it made and would have received in addition thereto $5,000 which it called "a fee," and the assignment would have served its purpose. The plaintiff would have had no further interest in the contracts and the mortgages would have been satisfied.

Clearly this transaction created the relationship of creditor and debtor and not that of seller and buyer despite the language used in the agreement of August 2, 1941, and both the trial court and the reviewing court correctly so held.

The second contention of the plaintiff is presented argumentatively in "Questions Involved" II, III, IV, and V, and may be condensed as follows: Did the defendant become liable to the plaintiff by reason of its acceptance of the sum of $3,051.92 paid upon an indebtedness of Brill Uniforms to the defendant incurred prior to August 2, 1941, in violation of the terms of the contract of that date? The determination of this question depends upon whether a trust was created and

whether the defendant had knowledge of the terms of the contract of August 2, 1941. These are questions of fact. Upon that question the trial court found that the account designated "Brill Uniforms Special Trust Account" was created by Brill Uniforms as a matter of convenience and not to create a fiduciary account; that at the time the account was opened the contract of August 2, 1941, was not examined by the officers or employees of the defendant and none of the officers or employees of said defendant had knowledge of the contents thereof and that when payment was made to the defendant on August 12, 1941, neither the bank nor any of its officers or employees knew that the funds with which such payment was made actually were a part of the $32,000 loaned to the said Brill Uniforms by the plaintiff. The force of plaintiff's arguments upon this phase of the case is very much weakened by the determination that the transaction was a loan and not a purchase and sale. Being a loan, the plaintiff parted with control of the funds loaned. While the contract provided that no part of the $32,000 should be—

"diverted to the personal use of the said parties of the first part or either of them, and that none of said fund will be diverted to pay pre-existing liabilities of the partnership or either partner except with the written consent of the party of the second part"—

the contract contained no provision nor does there appear to have been any understanding to the effect that Brill Uniforms should keep the $32,000 separate and apart from other funds belonging to Brill Uniforms. No attempt was made to create a trust fund. The finding of the trial court that the defendant had no knowledge of this provision of the contract and that no trust was created must be sustained. Having no knowledge of the terms of the contract, without indicating what its liability would be if it had had such knowledge, it is clear that the defendant was guilty of no breach of faith or violation of

trust in accepting the $3,051.92 in payment of a part of the prior indebtedness owing to it by Brill Uniforms.

The trial court held that the contract of August 2, 1941, was void as against creditors. We do not necessarily reach that matter and for that reason do not consider it.

We have carefully considered all of the questions raised by the plaintiff on this appeal. We need notice only one other in this opinion. Plaintiff contends that the court erred in denying it leave to amend so as to allege damages in the sum of $9,831.99 in lieu of the $3,051.92 alleged in the complaint and set out in the addendum clause. In this connection we need only say that, in view of the foregoing conclusions which we have reached, this contention drops out of the case along with a number of others which depend for their vitality upon the proposition that the transaction of August 2, 1941, was a sale and not a loan.

*By the Court.*—Judgment affirmed.