### In re ANCOR EXPLORATION COMPANY, a general partnership, Debtor.

### In re ANCOR PETROLEUM, INC., Debtor.

### In re BLUEBELL OIL & GAS, INC., Debtor.

### Bankruptcy No. 83–C–239–BT.

United States District Court, N.D. Oklahoma.

May 12, 1983.

---

Paul C. Kurland of Baer, Marks & Upham, New York City, Mack Muratet Braly & Associates, Tulsa, Okl., for Sixth Geostratic Energy Drilling Program 1980, Seventh Geostratic Energy Drilling Program 1980, Eighth Geostratic Energy Drilling Program 1980, First, Second and Third Ancor-Geostratic Drilling Partnerships 1980, Robert S. Sinn and Jan S. Mirsky.

Joseph R. Farris and Brenda J. Huddleston of Feldman, Hall, Franden & Woodard, Tulsa, Okl., for appellee, Robert A. Franden, Trustee for Ancor Exploration Co., Ancor Petroleum, Inc., and Bluebell Oil and Gas, Inc.

## AMENDED ORDER

### (REPLACING ORDER DATED MAY 4, 1983)

BRETT, District Judge.

This matter comes before the Court on appeal from the March 3, 1983 order of the Bankruptcy Court approving the sale of substantially all of the assets of the debtors in a Chapter 11 proceeding pursuant to the "Notice of Hearing and Application for Order Approving Sale of Assets" filed on January 27, 1983, by Robert A. Franden, trustee for Ancor Exploration Company ("Ancor"), Bluebell Oil & Gas, Inc. ("Bluebell") and Ancor Petroleum, Inc., ("Petroleum"), collectively referred to herein as "debtors." The appeal presents the following question: In a Chapter 11 proceeding, with Bankruptcy Court approval and absent an emergency, can a trustee by private sale not in the ordinary course of business and over the objection of an interested party, sell substantially all of the estate assets without first complying with the plan and disclosure requirements of 11 U.S.C. § 1125 *et seq?*

THE SCOPE OF REVIEW

Following the recent decision by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which found the jurisdictional grant of the Bankruptcy Reform

**804**

Act unconstitutional, the judges of the United States District Court for the Northern District of Oklahoma entered an Order adopting a Rule which delegated certain authority to the judge of the Bankruptcy Court.[1] Paragraph (e)(2)(B) of the Rule allows the District Court to conduct a *de novo* review of a bankruptcy court if it so desires. The Rule states:

> "In conducting review, the District Judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the Bankruptcy Judge, and need give no deference to the findings of the Bankruptcy Judge."

In the exercise of its discretion, the Court concludes a *de novo* hearing will not be conducted.

■ The standard of review of the Bankruptcy Court's approval of the proposed sale is whether the Court's findings were clearly erroneous. Rule 810 of the Rules of Bankruptcy Procedure; *United States v. United States Gypsum Company,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948).

## FACTUAL BACKGROUND [2]

There are six Geostratic partnerships involved herein as creditors (sometimes referred to collectively as "the Geostratics"). Sixth Geostratic Energy Drilling Program 1980, Seventh Geostratic Energy Drilling Program 1980 and Eighth Geostratic Energy Drilling Program 1980 are known as the investor partnerships. They are limited partnerships whose general partner is Robert S. Sinn and Jan S. Mirsky and whose limited partners are unnamed investors.

First Ancor-Geostratic Drilling Partnership 1980, Second Ancor-Geostratic Drilling Partnership 1980 and Third Ancor-Geostratic Drilling Partnership 1980 are known as the drilling partnerships. First, Second and Third Ancor-Geostratic Drilling Partnerships 1980 are limited partnerships in which Sixth, Seventh and Eighth Geostratic Energy Drilling Programs 1980 respectively are limited partners, the debtor, Ancor, is now a limited partner, and Sinn and Mirsky are now the general partner.[3] Basically the investor partnerships raised the drilling program funds and the drilling partnerships developed and drilled the oil and gas leases. The investor partnerships and the drilling partnerships along with Sinn and Mirsky as individuals are appellants herein.

Under the contract agreements creating First, Second and Third Ancor-Geostratic Drilling Partnerships 1980, the debtor Ancor originally was the general partner. Ancor is an Oklahoma partnership comprised of Docko, Inc., an Oklahoma corporation, and Harry E. McPhail, Jr., individually. McPhail was the active managing partner and chief operating officer of Ancor and thereby the manager of First, Second and Third Ancor-Geostratic Drilling Partnerships 1980. On May 21, 1982, because of alleged defalcations of McPhail, Docko, Inc., moved to dissolve Ancor in the District Court of Tulsa County, Oklahoma and caused a temporary receiver to be appointed, thereby removing McPhail from his management position and further involvement in Ancor. On July 8, 1982, Docko, Inc., filed an involuntary petition for reorganization on behalf of Ancor under Chapter 11 of the Bankruptcy Code in this dis-

1. Local rule M–128 adopted December 23, 1982.

2. The corporate and partnership maze overly contributes to the complexity of the matter. See the organizational chart attached. (Exhibit "A")

3. Under paragraph 15.3 of the First, Second and Third Ancor-Geostratic Drilling Partnerships 1980 written agreements, if the business of the drilling partnerships is continued in accordance with paragraph 15.2, the status of the

bankrupt or removed general partner, Ancor herein, is changed to that of limited partner. *See also In re Harms,* 10 B.R. 817 (Bkrtcy.Colo. 1981) where it was held a general partner in a limited partnership cannot remain the general partner once the limited partnership files its petition in bankruptcy and the general partner becomes the debtor-in-possession. The Court found the general partner in a limited partnership to be in a fiduciary relationship with the limited partners which is in conflict with the change in legal status occasioned by the filing of the bankruptcy.

trict. On the same day Docko, Inc., filed its voluntary bankruptcy petition for reorganization under Chapter 11.[4]

Pursuant to the provisions of paragraphs 15.1 and 15.2 of the First, Second and Third Ancor-Geostratic Drilling Partnerships 1980 written agreements, Sinn and Mirsky were elected and designated by the undersigned Court as the new general partner of First, Second and Third Ancor-Geostratic Drilling Partnerships 1980 on November 29, 1982.[5]

Docko, Inc., is an Oklahoma corporation formed for the purpose of being a partner in Ancor. Docko, Inc. is a wholly owned subsidiary of A/S Docko Corporation, a large Norwegian corporate conglomerate. A/S Docko Corporation also wholly owns A/S Selvaagbygg, another Norwegian corporation. A new company, "Newco," has now been organized as an Oklahoma corporation called Agathon, Inc. (referred to herein as "Newco/Agathon"). It is a wholly owned subsidiary of A/S Selvaagbygg. Moreover, A/S Docko originally owned 90 per cent of the stock of Bluebell but transferred the Bluebell stock to Ancor as the capital contribution of Docko, Inc. in the Ancor partnership. Ancor Petroleum, Inc., is wholly owned by Ancor. (See Exhibit "A").

The trustee for the debtors on January 27, 1983 applied to the Bankruptcy Court to sell substantially all of the assets of Ancor, Bluebell and Petroleum to Newco/Agathon. In consideration of the conveyance of the assets, A/S Selvaagbygg, the owner of Newco/Agathon, has proposed to the trustee the following transaction:

4. Bluebell Oil & Gas, Inc., a Texas corporation, and Ancor Petroleum, Inc., an Oklahoma corporation, filed voluntary petitions for reorganization under Chapter 11 on August 23, 1982.

5. Case No. 81–C–576–BT pending in this court is basically a contract dispute between the Geostratics and Ancor, et al.

6. These working interests were pledged as collateral by Ancor for the loan from First National Bank of Oklahoma City. The validity of First National Bank's lien is the subject of litigation in the United States District Court for

1. In exchange for substantially all the assets of the debtor estates (consisting primarily of oil and gas working interests, undeveloped leases, three drilling rigs and incidental office furniture and equipment), the debtor estates will receive:

a) $1,350,000 cash.

b) the release of debtors from $5,375,000 of promissory notes (approximately $936,000 secured by the Wilson rig, the balance unsecured), payable to A/S Selvaagbygg.

c) the release of Ancor and assumption by Newco/Agathon of a promissory note payable to First National Bank of Oklahoma City with a present balance of $800,000. Although First National Bank will release Ancor, its lien will remain as against the working interests of First, Second and Third-Ancor Geostratics which are now being administered by Sinn and Mirsky as general partner.[6]

d) the assumption of the defense by Newco/Agathon of Ancor in two pending lawsuits in the United States District Court for the Northern District of Oklahoma, Nos. 81–C–576–B and 82–C–684–B, the former being the Geostratics claim, to the extent of the amount of any recovery against Ancor which would have been received by that claimant in a liquidation under Chapter 7 of the Bankruptcy Code.

2. Included in the terms of the "Newco" offer is a closing date of March 31, 1983, subsequently extended. Also included is an "upset price" provision which limits the trustee to accepting other offers only if in excess of $8,600,000.[7]

the Western District of Oklahoma between the Geostratics and the bank.

7. The "upset price" was proposed by Newco/Agathon and calculated on the cash price to be paid plus the value of the loans to be forgiven by A/S Selvaagbygg. Transcript of the Hearing on Application for Order Approving Sale of Assets held February 25, 1983, before the Bankruptcy Court, pp. 19–20. The "upset price" appears to be unrealistic in that it includes a substantial sum of unsecured debt. The "upset price," as a practical matter, de-

Appellants propose the following as additional terms of the sale:[8] 1) Appellants claim the working interests of Sixth, Seventh and Eighth Geostratic Energy Drilling Programs 1980 and revenue attributable to those working interests in the approximate amount of $500,000 were being held in trust by Ancor as the former general partner of the First, Second and Third Ancor-Geostratic Drilling Partnerships 1980. Appellants claim the Newco/Agathon offer should make some accommodation for the payment of the alleged trust monies; 2) Appellants claim the First National Bank of Oklahoma City lien should be removed from the working interests of the First, Second and Third Ancor-Geostratic Drilling Partnerships 1980; and 3) Appellants claim Newco/Agathon's liability as successor to Ancor should be bonded.

LEGAL ANALYSIS

Several courts have considered whether a trustee may, with court approval and over the objection of an interested party, sell all or substantially all of the estate assets not in the ordinary course of business without compliance with Chapter 11 requirements. The underlying issue is how 11 U.S.C. § 363(b) fits into the reorganization scheme of Chapter 11.

11 U.S.C. § 363(b) provides:

"The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

11 U.S.C. § 1123(b)(4), dealing with the contents of a reorganization plan, states a plan may:

"provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests; ..."

Under 11 U.S.C. § 1125(b), an acceptance or rejection of a plan may not be solicited from a creditor of the estate unless prior to the solicitation an approved plan and disclosure statement are transmitted to the creditor. The creditors must then vote on the plan (11 U.S.C. § 1126), and if approved, the Bankruptcy Court must confirm the plan (11 U.S.C. § 1129). Therefore, under the provisions of Chapter 11 it appears a sale of all or substantially all of the estate assets may be made, but only after disclosure, approval and confirmation. Section 363(b), a general administrative provision of the Bankruptcy Code, would allow such a sale after notice and a hearing, thus conflicting with the procedural and substantive provisions of Chapter 11.[9]

Courts attempting to reconcile this apparent conflict have differed in their results. In support of their argument that the trustee cannot sell the assets of the debtors herein absent an emergency without compliance with Chapter 11 provisions, appellants rely upon the cases of *In re White Motor Credit Corporation,* 14 B.R. 584 (Bkrtcy.N.D.Ohio 1981); *In re D.M. Christian Co.,* 7 B.R. 561 (Bkrtcy.N.D.W.Va. 1980); and *In re Solar Mfg. Corp.,* 176 F.2d 493 (3rd Cir.1949). Appellees rely upon the more liberal view allowing such a sale under § 363 when it is in the best interests of the estate, as exemplified by *In re Dania Corporation,* 400 F.2d 833 (5th Cir.1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 994, 22 L.Ed.2d 122 (1969) and its progeny.[10]

In *White Motor Credit Corporation, supra,* White Motor and two of its subsidiaries in reorganization entered into an agree-

---

terred the trustee from making inquiry of other potential purchasers.

**8.** No other creditor objected to the proposed sale.

**9.** The trustee herein obtained court approval on March 3, 1983, for the sale of substantially all of the debtors' assets after notice and hearing in compliance with § 363(b). Thereafter, on March 29, 1983, the trustee filed a disclosure statement containing a liquidation plan which included the sale to Newco/Agathon as an element of the plan.

**10.** *See In Re Coastal Cable T.V., Inc.,* 24 B.R. 609 (Bkrtcy. 1st Cir.1982); *In re Boogaart of Florida, Inc.,* 17 B.R. 480 (Bkrtcy.S.D.Fla.1981); *In re WHET, Inc.,* 12 B.R. 743 (Bkrtcy.Mass. 1981); *In re WFDR, Inc.,* 10 B.R. 109 (Bkrtcy. N.D.Ga.1981); and *In Re Tele/Resources, Inc.,* 6 B.R. 628 (Bkrtcy.S.D.N.Y.1980).

ment for the sale of substantially all of the subsidiaries' truck manufacturing operations to AB Volvo. The subsidiaries filed an application for a hearing to consider the proposed sale and the trustee for the subordinated debenture holders of White Motor objected to the proposed sale until the Bankruptcy Court determined whether such a sale was appropriate prior to the filing and/or confirmation of a plan of reorganization.

After an extensive examination of the legislative history of § 363(b), the *White Motor* court found Congress deliberately rejected the suggestion that sales of all or substantially all of the estate assets might be accomplished under § 363(b). The court said:

> "As a matter of legislative intent, to endow section 363 with the purpose of or a potential for total reorganization would nullify, at debtor's option, the major protections and standards of chapter 11 of the Code...."

> .     .     .     .     .

> "It is clear, and the Court holds accordingly, that in a chapter 11 reorganization under the Bankruptcy Code, Section 363(b) does not authorize sale of all or substantially all assets of the estate." *White Motor Credit Corporation,* 14 B.R. at 590.

However, the *White Motor* court did find Congress intended to leave intact the "emergency exception" developed by case law wherein a sale of substantially all of the estate assets could be accomplished under § 363(b) in a demonstrated emergency situation. The *White Motor* court found it was faced with such an emergency because the debtor estates faced a substantial likelihood of a loss approximating $40 billion should the proposed sale not proceed.

In contrast to the *White Motor Credit Corporation* case is *In re WHET, Inc.,* 12 B.R. 743 (Bkrtcy.Mass.1981). There, the trustee proposed a sale of substantially all of the assets of radio station WHET and gave notice of the proposed sale under § 363(b). The notice was widely advertised and resulted in three counteroffers. Objec-

tions to the sale challenged the trustee's authority to sell substantially all of the estate assets in the absence of a confirmed plan providing for such a sale. The court said:

> "As to the authority of a trustee to sell all the assets of an estate, 11 U.S.C. § 363(b) plainly authorizes a trustee, after notice and hearing, to sell property of the estate other than in the ordinary course of business. Section 363 does not limit the quantity of property which may be sold by the trustee and case law interpreting § 363(b) is clear that the broad wording of this provision contemplates a sale of even all of a debtor's assets.

> .     .     .     .     .

> "As to whether the sale by a Trustee of all the Debtor's assets must take place in the context of a confirmed reorganization plan, the case law is again clear that there is nothing objectionable about a sale of all the assets outside of a Chapter 11 plan. Although a trustee is authorized pursuant to 11 U.S.C. § 1123(b)(4) to propose a plan which provides for the sale of all or substantially all of the property of the estate, this authorization is permissive and is not the exclusive authority to which substantially all the assets of a debtor may be sold. A trustee may, *in appropriate circumstances,* first liquidate the assets of a debtor and then propose a plan for distributing the proceeds to creditors." *In re WHET, Inc.,* 12 B.R. at 750. (Emphasis added).

Thus, the WHET court concluded in a chapter 11 proceeding a sale of substantially all of the estate assets other than in the usual course of business may be authorized under either § 363(b) or § 1123(b)(4), prior to plan approval. However, the court stated:

> "There are circumstances where the proposed sale of substantially all of the assets of the Debtor would be inappropriate despite the authority of Sections 363(b) and 1123(b)(4) and the cases decided thereunder and, upon objection, not allowed by the Court. *Such circumstances might include cases where the assets*

*have not been properly exposed to the market or where the sale has been arranged by the debtor who is to have an interest in the purchasing entity."* In re *WHET, Inc.,* 12 B.R. at 751. (Emphasis added).

The *White Motor Credit* and *WHET* cases present each side of the issue. But, neither case dealt with the situation facing the Court herein. Here, the proposed sale is to an "insider"—a newly formed corporation owned by an affiliate of the debtor.[11]

■ The Court concludes the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b). However, each such proposed sale must be examined from its own facts to determine whether approval is justified.

The Bankruptcy Court should make the following specific findings supported by the record:[12]

1) Whether there are facts constituting an emergency or in the absence of a demonstrated emergency, whether there are compelling facts and circumstances which support approval of the sale, be it public or private;

2) If the trustee has not solicited other prospective purchasers, private or public, whether there are facts that justify the trustee not doing so; and

3) Whether the sale, private or public, is in the best interests of the debtor estate when the consideration paid and all other relevant factors are taken into account.

■ Here, the Bankruptcy Court approved by order dated March 3, 1983, the proposed sale of substantially all of the estate assets to Newco/Agathon and without supporting factual findings concluded:

"1. That due and sufficient notice of this hearing was given in accordance with law and the Orders of this Court.

2. That the Agreement contains terms and conditions that are fair, proper, reasonable, and that the performance of the Agreement would be in the best interests of the Debtors and others interested therein, and should be approved."

No emergency was presented from the record although Newco/Agathon imposed deadlines for acceptance of the offer. Moreover, by the trustee's own admission, no attempt was made to "shop" for better offers with the exception of the drilling rigs. At pages 11–12 of the transcript of the hearing on the trustee's application for order approving sale of assets, the following was stated:

Q: (By Paul Kurland) Have you made any attempts in terms of advertising these assets to obtain cash counteroffers for the assets, forgetting for the moment the security interests?

A: (By Robert Franden, trustee) We have not made advertised offers. We have not put the oil and gas properties up for sale. We are operating solely on the reserve analysis there. We have asked on the rigs, to try and get offers on the rigs, and have had people go by and look at them and give us offers. For the longest time we didn't get any, and then we got one on the small rig. We were offered $150,000 for it."

Nor has the trustee given any justification on the record for his failure to solicit other offers for the assets. The trustee found the offer to be "a bird in the hand," and sought quick court approval for the purpose of getting the creditors paid as soon as possible.[13]

Further, the record is unclear concerning the value being paid by the purchaser in return for the value received. From the

---

11. Newco/Agathon is an "insider" as defined in 11 U.S.C. § 101(25) of the Bankruptcy Code because of its affiliation with the A/S Docko interests as shown on Exhibit "A".

12. Such detailed findings are even more compelling when the sale is to an "insider."

13. Transcript of the February 25, 1983 hearing before the Bankruptcy Court at pg. 13.

information available in the record on appeal the consideration for the sale appears as follows: [14]

| Newco/Agathon obligation: | Approximate or appraised value |
|---|---|
| 1. Pay $1,350,000 cash | $1,350,000.00 |
| 2. Release $5,375,000 of promissory notes payable to A/S Selvaag-bygg (approximately $936,000 of which is secured) | 936,000.00 + |
| 3. Assume $800,000 promissory note payable to First National Bank of Oklahoma City | 800,000.00 |
| 4. Defense of Ancor in pending lawsuits and pay to extent of Chapter 7 liquidation | ? |
| TOTAL | $ ? |

| Newco/Agathon receiving: | |
|---|---|
| A. Three drilling rigs: | $1,136,760.00 |
| | 333,345.00 |
| | 936,187.00 |
| B. Bluebell and Ancor producing properties including reserves (25% of $4,076,685.00) | 1,019,171.25 |
| C. Young producing property | 57,742.00 |
| D. Undeveloped leases | ? |
| E. Net proceeds from the sale of the Meier lease | 205,000.00 |
| F. Claims of Ancor against Sixth, Seventh and Eighth Geostratic Partnerships | ? |
| G. Office furniture and equipment | ? |
| TOTAL | ? |

The present record is inadequate to yield the specific findings required as a necessary predicate for approval of the sale in question.

IT IS THEREFORE ORDERED the matter is remanded to the Bankruptcy Court for the purpose of conducting hearings and entering findings not inconsistent with this Order.

14. It may not be possible to make reasonably accurate appraisals of items 2, 4 and F.

810

## EXHIBIT A
### A/S DOCKO INTERESTS
### (SELVAAG FAMILY INTERESTS)

Second Ancor-Geostratic Drilling Partnership 1980 bears the same relationship to Seventh Geostratic Energy Drilling Program 1980 as that illustrated above between First Ancor-Geostratic Drilling Partnership 1980 and Sixth Geostratic Energy Drilling Program 1980; similarly, Third Ancor-Geostratic Drilling Partnership 1980 occupies an identical position relative to Eighth Geostratic Energy Drilling Program 1980