In the Matter of: DON MILLER, INC. d/b/a Chuck's Super Valu, Chuck Rehn's Super Valu, Debtor.

**Bankruptcy No. 82–00952.**

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 9, 1984.

Robert Berdan, Whyte & Hirschboeck, S.C., Milwaukee, Wis., for Donald Miller.

Louis R. Jones, Jones & Feldner, Milwaukee, Wis., trustee and for trustee.

## MEMORANDUM DECISION AND ORDER DISALLOWING CLAIM

C.N. CLEVERT, Bankruptcy Judge.

This matter, which can best be described as the trustee's objection to the secured claim of Donald Miller, comes before the court upon stipulated facts. The parties have also agreed that the issues before the court are: (1) whether Donald Miller is a secured creditor whose lien must be satisfied from proceeds of a sale of assets of the debtor; and (2) if Miller's security interest is found to be valid, whether assets acquired by the debtor after the date of perfection are also subject to the security interest.

The facts may be summarized as follows: The claimant, Donald Miller (Miller), is the former owner of the debtor corporation Don Miller, Inc. On March 21, 1978, Charles and Donna Rehn purchased all of the common stock of the debtor corporation from Miller for the price of $107,084.74. On the day of closing, the Rehns executed a promissory note to Miller in the amount of $102,000.00, to be paid in equal monthly installments of $1,153.49, beginning on April 21, 1978, plus two additional payments of $5,000 each on December 21, 1978, and July 21, 1979, with interest on the unpaid balance at 8½% per annum. The note, signed by the Rehns only, further provided, in part, that:

In the event that the makers sell or transfer ownership of more than 50% in aggregate of either the common stock or the assets of DON MILLER, INC., or any successor corporation, any funds received from such sale shall be applied to the outstanding obligation of this Note and shall be immediately deposited in an escrow account with the Great Midwest Savings & Loan Association of Hartland, Wisconsin, in the name of DONALD MILLER, or any other depository agreed in writing between makers and DONALD MILLER. . . .

This Note is secured by a first security interest in the furniture, fixtures and equipment of DON MILLER, INC. located at 111 Village Drive, Hartland, Wisconsin.

(Exhibit 2, Stipulation, 6/10/83)

On May 22, 1978, Miller filed a financing statement with the Secretary of State of Wisconsin covering:

All furniture, fixtures and equipment located at debtor's [Don Miller, Inc.] Super Valu food store at Village Drive, in the Village of Hartland, Waukesha County, Wisconsin, including but not limited to all store fixtures, freezer cabinets, refrigerator cabinets, shelves, movable furniture, refrigeration equipment and carts.

(Exhibit 4, Stipulation, 6/10/83)

On April 1, 1982, the debtor filed a petition under Chapter 7 of the United States Bankruptcy Code. The trustee of the debtor's estate, Louis Jones, sold certain assets of the estate, realizing $16,559.91 (or $16,-559.61).[1] And, the parties have stipulated that $8,450 of the total constituted sale proceeds from assets of the estate acquired after the perfection of Miller's security interest.

The dispute before the court, therefore, involves the validity and extent of Miller's

---

1. The stipulation is inconsistent regarding amount. It is also vague as to what specific assets were sold.

claimed security interest in assets of the debtor corporation. The trustee has argued that Miller does not have a valid claim against the sale proceeds because he did not obtain a valid security interest in the debtor's assets pursuant to § 409.203(1), *Wis. Stat.* To support his argument, the trustee has pointed to the absence of a security agreement and/or the absence of consideration or value given between Miller and the debtor. Miller countered by arguing that the slightest detriment by the promisee or benefit received by the promisor established sufficient consideration. The parties have also briefed the issue of whether property acquired after perfection would also be covered by the security interest. But because I find that an enforceable security interest was never obtained, this opinion is limited to a discussion of that issue only.

## DISCUSSION

Under Wisconsin law, a security interest does not attach and is unenforceable unless the following statutory requirements have been satisfied:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) Value has been given; and

(c) The debtor has rights in the collateral.

§ 409.203, WIS.STAT.

Furthermore, Wisconsin has followed that line of cases lead by *American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 63, 196 A.2d 150 (1963) which hold that a security agreement must be in writing and must contain appropriate language granting a security interest in specified property.

Thus, in *Barth Brothers v. Billings,* 68 Wis.2d 80, 88, 227 N.W.2d 673 (1975), the Wisconsin Supreme Court adopted the *American Card* rule:

There the court ruled that, while it is possible for a financing statement and a security agreement to be one and the same document, it is not possible for a financing statement which does not contain the debtor's grant of a security interest to serve as a security agreement. The court said:

The financing statement which the claimants filed clearly fails to qualify also as a security agreement because nowhere in the form is there any evidence of an agreement by the debtor to grant claimants a security interest. As for the testimony of the claimants' agent upon which they also rely to prove the intention of the debtor to make such a grant, our answer is that his testimony is without probative force to supply the absence of a required security agreement in writing. *See also: L and V Co. v. Asch* (1972), 267 Md. 251, 297 A.2d 285.

In *Barth,* the Wisconsin Supreme Court agreed with the trial court's finding that no security interest existed where a written security agreement did not exist and where the only suggestion of any security were "notations" in promissory notes that the debts were secured by financing statements.[2]

Under the *Barth* rationale, and the cases adopted therein, Miller's claim must fail because there is no document which can serve as a security agreement. The language in the Miller-Rehn promissory note (See Exhibit 2) that the note "is secured by" a security interest in the furniture, fixtures and equipment of the debtor cannot be construed as an agreement granting a security interest in the debtor's property.

In making this determination, the court is aware of the other line of cases which have adopted a more liberal reading of Section

---

2. The *Barth* court not only adopted the rule in the leading case of *American Card* but also made reference to decisions from other jurisdictions which have stood for the proposition that an enforceable security interest cannot exist in the absence of a written agreement containing words granting a security interest. See *Barth,* 68 Wis.2d at 89–90, 227 N.W.2d 673.

9–203 of the U.C.C.[3] and has found that many of those cases are factually distinguishable from the case at bar because of demonstrable debtor involvement. Nonetheless, this court is bound to follow applicable Wisconsin law.[4]

\* \* \* \* \* \*

■ Although the preceding is dispositive of the dispute before the court, it is noted that the stipulation and attached exhibits do not show that the debtor or anyone purporting to act in a corporate capacity

signed the financing statement or any documents which granted Miller a security interest in the debtor's property nor do they show that the *debtor* or its agents agreed to grant Miller a security interest.[5] That being so, § 409.203, *Wis.Stat.,* precludes a finding that Miller has a security interest in the debtor's property, and § 409.402(1),[6] *Wis.Stat.,* precludes a finding that Miller perfected a security interest in the debtor's property. Consequently, the trustee's rights as a judicial lien creditor under 11 U.S.C. § 544(a)[7] and § 409.301(1)(b),[8] *Wis.*

**3.** See e.g.:

*In re Bollinger,* 614 F.2d 924 (3d Cir.1980) Here the debtor executed the promissory note. Although the court observed that a promissory note standing alone would probably not satisfy the requirements of Pennsylvania law, the court considered other documents which demonstrated an intent to create a security agreement:

When the parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the debtor describing the collateral which demonstrate an intent to create a security interest in the collateral. 614 F.2d at 928.

*Nolden v. Plant Reclamation (In re Amex-Protein Development Corporation),* 504 F.2d 1056 (9th Cir.1974) criticizing *American Card Co.* and cases following it. Here the debtor signed the promissory note.

*In re Numeric Corporation,* 485 F.2d 1328 (1st Cir.1973) Financing statement and directors' resolution directing the preparation of documents evidencing a security interest were found to constitute an agreement within the meaning of § 9–203(1)(b):

Given these two limited purposes of § 9–203(1)(b), and the flexible definitions of 'security agreement' and 'agreement' found elsewhere in the Code, there seems to be no need to insist upon a separate document entitled 'security agreement' as a prerequisite for enforcement of an otherwise valid security interest. A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it. [Citations omitted] 485 F.2d at 1331.

See also: White and Summers, *Handbook of the Law Under the Uniform Commercial Code* (Hornbook Series) (West: 1980) at pp. 904–910 disagreeing with *American Card Co.* and its progeny at p. 907, fn. 34.

**4.** *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**5.** 11 U.S.C. § 101(36): "security agreement" means agreement that creates or provides for a security interest;

11 U.S.C. § 101(37): "security interest" means lien created by an agreement. . . .

**6.** 409.402 Formal requisites of financing statement; amendments; mortgage as financing statement. (1)(a) A financing statement is sufficient if it gives the name of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches.

**7.** § 544. Trustee as lien creditor and as successor to certain creditors and purchases.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extended credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists;

**8.** 409.301 Persons who take priority over unperfected security interests; rights of "lien

*Stat.,* are superior to any interest Miller may claim in the debtor's property.

\* \* \* \* \* \*

Based upon the foregoing findings of fact and conclusions of law,

The trustee's objection is sustained and Donald Miller's lien claim is hereby disallowed.

creditor". (1) Except as otherwise provided in sub. (2), an unperfected security interest is subordinate to the rights of: . . .

(b) A person who becomes a lien creditor before the security interest is perfected. . . .